## NANNIE E. BEDFORD
### v.
## LETTIE L. BEDFORD, ADMINISTRATRIX.

*Parent and Child—Support of Infant—Liability of Father—Implied Promise—Services Rendered by Wife to Third Party.*

1.  Where a wife renders valuable services to a third party, he can not defeat a claim for compensation on the ground that she is a married woman, owing all her time to her husband and family. Such an objection can come only from the husband.

2.  In the case presented, this court holds that the circumstances proved sufficiently raised an implied promise on the part of a father to pay for the support of his infant child.

[Opinion filed February 14, 1890.]

IN ERROR to the Circuit Court of Piatt County; the Hon. C. B. SMITH, Judge, presiding.

Mr. C. F. MANSFIELD, for the plaintiff in error.

Messrs. S. R. REED and H. H. CREA, for defendant in error.

An action can not be maintained against the parent for necessities furnished his infant child by a third person, unless an express promise is shown or circumstances from which a promise may be inferred. McMillen v. Lee, 78 Ill. 443; Gotts v. Clark, 78 Ill. 229; Hunt v. Thompson, 3 Scam. 179.

Where services are voluntarily rendered by those near of kin, the law will not imply a contract for compensation, but express contract to pay must be shown, or no recovery can be had. Meyer v. Malcom, 20 Ill. 621; Hall v. Finch, 29 Wis. 278, 286.

CONGER, J.   Nannie E. Bedford is the wife of Benjamin F. Bedford.   Stephen G. Bedford was a brother of Benjamin F. Bedford, and Amanda Bedford, his former wife, was a sister to the plaintiff in error, Nannie E. Bedford.   Their residences were but a short distance from each other.   At the time of

the death of Amanda Bedford, her sister, Nannie E. Bedford was present. Amanda Bedford, the deceased, knew and was conscious of her approaching death. Knowing that she was leaving two little children, one but nine days old, and the other but two or three years old, she asked her sister, in that solemn time, in the presence of death, to take her infant child and raise it, as she wanted no other woman than she to do so. Stephen G. Bedford, the husband of the deceased, was present, as was Nannie E. Bedford, the plaintiff. In compliance with the request of Amanda Bedford, Nannie E. Bedford took the child, Walter, to her home, and Stephen G. Bedford interposed no objections, but frequently visited the child, acknowledging and ratifying all that was done and said by his wife, and consenting that Nannie E. Bedford should care for and raise his child. Benjamin F. Bedford, the husband of Nannie E. Bedford, at no time made any objection to his wife caring for and raising Stephen G. Bedford's child Walter. Benjamin F. Bedford plainly told Stephen G. Bedford, his brother, that he (Stephen G. Bedford) must pay his wife, Nannie E. Bedford, for the raising and care of Walter, as she had done the work.

Amanda Bedford died June 5, 1883. Nannie E. Bedford took the child at its mother's death, and kept it for a period of ninety-one weeks. During the earlier part of this period Nannie E. Bedford, with her husband, Benjamin F. Bedford, resided on their farm, moving to Mansfield in the fall of 1883. Stephen G. Bedford afterward came to town to live with his brother, Benjamin F. Bedford, bringing with him his oldest child, Crews Bedford, he having agreed with Benjamin F. Bedford that for himself and Crews he would pay one-half of the expenses of the family, girl hire, grocery bills, etc. This one-half of the expenses paid by Stephen G. Bedford was $10 per month. At the end of the time that Stephen G. Bedford lived with Benjamin F. Bedford they had a settlement, and it was expressly agreed and understood that the settlement, paying half of the expenses of the family, did not include the expenses and charge for caring for Walter Bedford. On three different occasions Stephen G. Bedford promised to pay Nan-

nie E. Bedford for the raising of Walter.    There is no evidence
of any payment or compensation to Nannie E. Bedford for
her services other than the attempted proof, on the part of
the defendants, to show that she had received a side-saddle in
part compensation for the care she had bestowed on Walter.
The child required more than ordinary care and attention, but
the value of the services rendered was variously estimated by
the witnesses.

The claim filed against the estate of Stephen G. Bedford,
upon which this suit is based, is for the period of ninety-one
weeks at $6 per week.    Judgment was rendered in behalf of
the plaintiff against the estate in the County Court, and an
appeal taken to the Circuit Court, in both instances the case
being tried without a jury before the court.    A verdict was
rendered in the Circuit Court in favor of the estate, against
the plaintiff.

It is true, as urged by counsel for defendant in error, that
an action can not be maintained against the parent for neces-
saries furnished his infant child by a third person, unless an
express promise is shown, or circumstances from which a
promise may be inferred; but in this case we think the circum-
stances shown in evidence are sufficient to show an implied
if not an express promise on the part of the father to pay for
the keeping of the child.    Mrs. Bird testifies to a conversa-
tion between plaintiff in error and the deceased, in which de-
ceased said to her:    "I expect to pay you for what you have
done for me."    Nannie (plaintiff in error) says:  "Are you
going to give Walter to me?" and he did not make her any
answer.    She said:  "Walter has been so much trouble to me
and expense, and I think that you ought to give him to me;"
and he says:  "I intend to pay you; I know that he has been
lots of trouble to you."    Mrs. Wilkey testifies that after the
deceased had married the second time she heard him say,
while talking with her, "that it was an awful care to raise a
family, and that he hadn't paid Nannie Bedford for the rais-
ing of Walter, but that he expected to some day."

Very slight circumstances would be sufficient to raise an
implied promise upon the part of the father, in such a case as

the present, to pay for the care of his little child.   It was his duty to care for it; and because plaintiff in error made no terms with her dying sister when she assumed the care of the child, is no reason why she should bear the burden that all laws, natural and divine, cast upon him.   The theory that plaintiff in error raised the child as her own, and therefore was not entitled to compensation, is destroyed by deceased's positive refusal to give the child to her.   He thereby repudiated the idea that the child was to be kept by her as her own, and retaining his control and authority over it, promised to pay her for its keeping.

Objection is also made that plaintiff in error, being a married woman residing with her husband, was incapacitated to enter into a contract for the keeping of this child.   We see no force in this objection when coming from a party other than her husband.   As said in Casner v. Preston, 109 Ill. 535, "It is certainly true that no one else can interpose such an objection but the husband."   When a wife gives valuable services to a third person, it does not lie in his mouth to say that she owed her entire time to her husband and family. Plaintiff in error was entitled to recover reasonable compensation, and the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*